UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH SCHIAVONE, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:21-CV-01686 |
| v. | (MEHALCHICK, M.J.) |
| LUZERNE COUNTY, et. al., | |
| Defendants. | |

**MEMORANDUM**

This is a civil rights action initiated upon the filing of a complaint by Plaintiffs Sarah Schiavone and Mickayla Meredick (collectively, "Plaintiffs") on September 2, 2021, in the Court of Common Pleas of Luzerne County against Defendants Luzerne County; Correct Care Solutions, LLC ("CCS"); and Wellpath, LLC ("Wellpath") (collectively, "Defendants").[1] (Doc. 1-4, at 2). Plaintiffs filed this action as Administrators of the Estate of Hailey Povisil (the "Decedent"). On September 30, 2021, Defendants removed this action to this Court. (Doc. 1). Plaintiffs filed an amended complaint on January 20, 2022, alleging that Defendants violated the Decedent's Eighth and Fourteenth Amendment rights, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). (Doc. 13, at 14-18). Now pending before the Court are two motions to dismiss filed by Defendants. (Doc. 15; Doc. 21). On February 3, 2022, Defendants CCS and Wellpath (collectively the "Medical

---

[1] In the original complaint, Plaintiffs also named Defendant Melissa Yankovich. (Doc. 1-4, at 3). The amended complaint intentionally omitted Defendant Yankovich from the pleadings and she was subsequently terminated from this action. (Doc. 13, at 2).

Defendants") filed a motion to dismiss. (Doc. 15). Defendant Luzerne County filed a partial motion to dismiss on March 10, 2022. (Doc. 21). For the reasons stated herein, the Medical Defendants' motion to dismiss is **DENIED in part and GRANTED in part,** and Defendant Luzerne County's motion to dismiss is **DENIED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs allege a violation of the Decedent's constitutional rights under the Eighth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, along with violations of the ADA and the RA. (Doc. 13, at 14-18). While incarcerated at the Luzerne County Correctional Facility ("LCCF"), the Decedent committed suicide due to the effects of her withdrawal symptoms from her heroin addiction. (Doc. 13, at 10). Plaintiffs contend that LCCF failed to implement a policy in order to reduce the frequent suicides in its inmates; that the Defendants did not implement any type of procedures for addiction withdrawal and that their access to mental health for prisoners was inadequate; that multiple female inmates suffered from drug-related deaths and suicide in the months prior to the Decedent's death and that Defendants failed to inquire as to why or take action to prevent these deaths; and that the mental health, addiction, and suicide prevention policies of Defendants were unconstitutional. (Doc. 13, at 2-10, 13-14). Plaintiffs describe the circumstances leading to the Decedent's suicide, including Defendants' awareness of the Decedent's heavy drug use, the Decedent's medical history, the Decedent's actions, and the Defendants' premature release of the Decedent into general population after being placed on suicide watch. (Doc. 13, at 10-12). Plaintiffs seek compensatory damages against Defendants in addition to punitive damages against the Medical Defendants. (Doc. 13, at 18).

On February 3, 2022, the Medical Defendants filed a motion to dismiss. (Doc. 15). On

March 10, 2022, Defendant Luzerne County filed a partial motion to dismiss.[2] (Doc. 21). The motions have been fully briefed and are ripe for disposition. (Doc. 15; Doc. 16; Doc. 19; Doc. 20; Doc. 21; Doc. 22; Doc. 23).

**II.    LEGAL STANDARD**

Defendants seek dismissal of Plaintiffs' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 15; Doc. 21). Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

---

[2] Luzerne County only challenges Plaintiffs' ADA and RA claims. (Doc. 22, at 3).

3

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### III.   DISCUSSION

The Medical Defendants argue that Plaintiffs fail to allege that they were deliberately indifferent to the Decedent's serious medical needs and her vulnerability to suicide. (Doc. 16,

4

at 6-12). Additionally, the Medical Defendants and Defendant Luzerne County state that Plaintiffs fail to assert a claim under the ADA or RA because the Plaintiffs seek redress for denial of medical treatment and the Decedent was not a qualified individual with a disability. (Doc. 16, at 12-15; Doc. 22, at 13). Further, Defendant Luzerne County states that Plaintiffs' ADA and RA claims fail as the Decedent was not denied benefits due to her disability. (Doc. 22, at 13). In response, Plaintiffs submit that they sufficiently allege that (1) the Decedent had a particular vulnerability to suicide, the Medical Defendants knew she was at risk, and were reckless and deliberately indifferent to her risk; (2) that the Medical Defendants were deliberately indifferent to the Decedent's serious medical needs; and (3) that the Decedent was a qualified individual with a disability and that Defendants discriminated against and failed to accommodate her due to her drug addiction. (Doc. 19, at 15-19, 21-25; Doc. 23, at 5-13).

    A.    DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED

In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. To state a claim for deliberate indifference to a medical need, a plaintiff must show "(1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citations omitted). A prison employee acts with deliberate indifference to an inmate's serious medical need when the employee "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

5

draw that inference." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 503 (M.D. Pa. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Defendants do not argue that Decedent did not allege a serious medical need, but move to dismiss the claims against them on the grounds that Plaintiffs fail to allege that the Medical Defendants were deliberately indifferent to that need.[3] To survive the Medical Defendants' motion to dismiss, Plaintiffs "must allege facts from which it can reasonably be inferred that the defendant acted with deliberate indifference to [the Decedent's] serious medical needs." *See Rivera v. PA Diebert*, No. 3:13-CV-01399, 2016 WL 4771104, at *5 (M.D. Pa. Aug. 17, 2016) (citing *Estelle*, 429 U.S. at 106; *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)), *report and recommendation adopted*, No. CV 3:13-1399, 2016 WL 4734683 (M.D. Pa. Sept. 12, 2016).

Viewing the factual allegations as true and in a light most favorable to the Plaintiffs, the Court finds that Plaintiffs have alleged sufficient facts to survive the Medical Defendants' motion to dismiss this claim. Plaintiffs allege that the Medical Defendants knew the Decedent has mental health issues, that she had been hospitalized, that they failed to document Decedent's medical issues or help her, that they knew of her past hospitalizations for mental illnesses and that they knew of her past suicidal ideations and also ignored her requests for help. (Doc. 13, at 10-12). Plaintiffs assert that "CCS assessed [the Decedent]'s need for a

---

[3] Plaintiffs sufficiently allege that Decedent had a serious medical need. Plaintiffs allege that the Decedent suffered from a serious medical need in that she was experiencing withdrawals from her opioid use disorder. (Doc. 13, at 14-15); *see U.S. ex rel. Walker v. Fayetter Cty., Pa.,* 599 F.2d 573, 576 (3d Cir. 1979) (prisoner alleged a deliberate indifference to serious medical need when he informed the prison officials of his heroin addiction, did not receive a medical examination within 48 hours, and experienced severe withdrawal symptoms).

mental health referral as 'urgent.' But CCS did not follow up and provide the mental health referral or treatment." (Doc. 13, at 11-12). Plaintiffs assert that "Defendants chose to leave [the Decedent] suffering without appropriate medication for her entire time in LCCF. Because appropriate medication was not provided to [the Decedent] in a timely fashion, she chose to end her own life to stop the unbearable pain she was feeling." (Doc. 13, at 15).

Accordingly, the Medical Defendants' motion to dismiss Plaintiffs' Eighth Amendment claim regarding deliberate indifference to a serious medical need is denied.

B.   DELIBERATE INDIFFERENCE TO VULNERABILITY TO SUICIDE

Deliberate indifference to risk of suicide is a more fact-specific application of the standard discussed above. *Stuart v. Pierce*, 2022 WL 605821, at *6 (D. Del. 2022). Under the Eighth Amendment, the suicide of a person in correctional custody may support recovery under 42 U.S.C. § 1983. *Diorio v. Harry*, 2022 WL 3025479, at *3 (3d Cir. 2022); *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (citations omitted) ("*Colburn II*"). A plaintiff must show that state officials were deliberately or recklessly indifferent to the risk of suicide. *Id.*; *Farmer*, 511 U.S. at 828 (citations omitted) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). This showing entails demonstrating: (1) that the person who committed suicide had a particular vulnerability to suicide; (2) that the custodial official knew or should have known about; and (3) that the custodial official acted with deliberate or reckless indifference to the person's particular vulnerability. *Palakovic v. Wetzel*, 854 F.3d 209, 218 (3d Cir. 2017) (citations omitted). These three elements are conjunctive, so the absence of one is fatal to the claim. *Id.*; *Colburn II*, 946 F.2d at 1026–27 (disposing of a deliberate indifference claim where the custodial official did not know or have reason to know of the decedent's

7

particular vulnerability to suicide). As stated, "the vulnerability to suicide framework is simply a more specific application of the general rule . . . requir[ing] that prison officials not be deliberately indifferent to the serious medical needs of prisoners." *Palakovic*, 854 F.3d at 222 (citing *Estelle*, 429 U.S. at 104).

### 1. Particular Vulnerability to Suicide

A particular vulnerability to suicide "speaks to the degree of risk inherent in the detainee's condition." *Diorio v. Harry*, 2022 WL 3025479, at *3–4 (3d Cir. 2022); quoting *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) (citation and internal quotation marks omitted). In order to satisfy particular vulnerability, there must be a "strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Woloszyn*, 396 F.3d at 320. The risk must be so obvious that a layperson would easily recognize the necessity for preventative action. *Palakovic*, 854 F.3d at 222 (quoting *Colburn II*, 946 F.2d at 1025).

Plaintiffs sufficiently allege that the Decedent demonstrated a particular vulnerability to suicide. (Doc. 13, at 10-15). Plaintiffs state that the Decedent suffered from severe mental health issues include bipolar with depression and anxiety, "had been hospitalized for her mental illnesses at least five times in the previous six to seven years," had contemplated suicide less than a year prior to her incarceration, and was a victim of sexual abuse or rape. (Doc. 13, at 11). Further, upon her admission to LCCF, the Decedent was placed on suicide watch for three days, needed an urgent mental health referral or treatment, and was begging for help. (Doc. 13, at 11-12). In addition to her mental health needs, the Decedent was suffering from severe opioid withdrawals and was exhibiting signs of agitation. (Doc. 13, at 10-12). As "[a] particular individual's vulnerability to suicide must be assessed based on the totality of the facts presented," the Court finds that, at this stage in the proceeding, Plaintiffs

8

have alleged that the Decedent demonstrated a particular vulnerability to suicide. *See Palakovic*, 854 F.3d at 230; *see also Nealman v. Laughlin*, No. 1:15-CV-1579, 2016 WL 4539203, at *8 (M.D. Pa. Aug. 31, 2016) (noting that while psychotic behavior by itself does not signal a particular vulnerability to suicide, such behavior in coalescence with a history of depression, mental health hospitalizations, and a prior suicide may constitute sufficient evidence of a particularized vulnerability to suicide); *Estate of Kempf v. Washington Cty.*, 2018 WL 4354547, at *16 (W.D. Pa. Sept. 12, 2018) (finding, at the summary judgment stage, that the plaintiff has demonstrated that the decedent presented a particular vulnerability to suicide "beyond mere drug withdrawal" as he had just been released from the hospital with suicidal plans, been diagnosed with depression and opiate dependence, was categorized as high suicide risk needing to see a psychiatrist, and placed on suicide watch for two days); *Mullin v. Balicki*, No. 11-CV-247, 2019 WL 2315044, at *5 (D.N.J. May 31, 2019) (finding that a "documented history of suicidal behavior [along with a history of mental illness and other suggestions] clearly indicates that there was a 'strong likelihood, rather than a mere possibility that self inflicted harm would occur.'"); *Stuart v. Pierce,* No. 17-934, 2022 WL 605821, at *6 (D. Del. Feb. 24, 2022) (decedent that had been placed on suicide watch and presented other indications of suicidal tendencies demonstrated a particular vulnerability to suicide).

### 2. Subjective Knowledge

Next, the plaintiff must show subjective knowledge of the vulnerability or that the official should have known that the detainee was particularly vulnerable. *Colburn II*, 946 F.2d at 1024-25. To establish that an official "should have known" of a prisoner's vulnerability to suicide, the risk must be "so obvious that a lay person would recognize the necessity for preventative action." *Stuart v. Pierce*, 2022 WL 605821, at *6 (D. Del. 2022); *Colburn v. Upper*

*Darby Twp.*, 946 F.2d 1017, 1025, 1026–27 (3d Cir. 1991) (holding the vulnerability to suicide was not obvious where the plaintiff swallowed pills but otherwise lacked a documented history of self-harm). "Should have known," in this context, goes beyond knowledge with ordinary prudence, or negligence, but is less than subjective appreciation of the risk. *Colburn II*, 946 F.2d at 1025.

Plaintiffs sufficiently allege that the Medical Defendants knew or should have known of her particular vulnerability to suicide. (Doc. 13, at 10-15). Plaintiffs state facts that demonstrate that the Medical Defendants knew of the Decedent's vulnerability to suicide. (Doc. 13, at 10-12). Plaintiffs allege that the Decedent indicated her extreme use and dependency on heroin and exhibited visible agitation when she soiled herself, vomited on herself, and was forced to keep warm by wrapping her mattress around herself. (Doc. 13, at 10-11). Further, Plaintiffs allege that the Medical Defendants knew of the Decedent's mental health needs, her hospitalization record, her contemplation of suicide, and her history of abuse. (Doc. 13, at 11). Finally, Plaintiffs allege that the Medical Defendants assessed the Decedent's mental health needs as urgent and placed her on suicide watch for three days. (Doc. 13, at 11-12). At this stage of the proceeding, Plaintiffs sufficiently allege that the Medical Defendants knew or should have known that the Decedent was at risk for suicide. (Doc. 13, at 10-12); *see Palakovic*, 854 F.3d at 222-23.

### 3. Deliberate Indifference

Once a plaintiff demonstrates that there was a particular vulnerability to suicide, which custodial officials knew or should have known about, the plaintiff must then show that the custodial officials acted with deliberate indifference in failing to prevent the harm that occurred. *Diorio v. Harry*, 2022 WL 3025479, at *6 (3d Cir. 2022); *Colburn II*, 946 F.2d at 1023.

Deliberate or reckless indifference is a willingness to ignore a foreseeable danger to the detainee's vulnerability, or conscience-shocking behavior in unhurried situations. *Kedra v. Schroeter*, 876 F.3d 424, 446 (3d Cir. 2017) (quoting *Morse*, 132 F.3d at 910; *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015)). Acting with deliberate indifference to a risk of suicide "is to recklessly disregard a substantial risk of serious harm." *Palakovic*, 854 F.3d at 227 (citation and internal quotation marks omitted). The necessary behavior is more than a mere "negligent failure to recognize the high risk of suicide." *Colburn II*, 946 F.2d at 1025; *see also Palakovic*, 854 F.3d at 224 n.15 (declining to precisely define the terms) and *Woloszyn*, 396 F.3d at 320–21 (same).

Viewing the factual allegations as true and in a light most favorable to the Plaintiffs, the Court finds that Plaintiffs have alleged sufficient facts to survive the Medical Defendants' motion to dismiss this claim. Plaintiffs allege that the Medical Defendants knew the Decedent has mental health issues, that she had been hospitalized, that they failed to document Decedent's medical issues or help her, that they knew of her past hospitalizations for mental illnesses and that they knew of her past suicidal ideations and ignored her requests for help. (Doc. 13, at 10-12). Plaintiffs assert that "CCS assessed [the Decedent]'s need for a mental health referral as 'urgent' but CCS did not follow up and provide the mental health referral or treatment." (Doc. 13, at 11-12). Plaintiffs further assert that "Defendants chose to leave [the Decedent] suffering without appropriate medication for her entire time in LCCF. Because appropriate medication was not provided to [the Decedent] in a timely fashion, she chose to end her own life to stop the unbearable pain she was feeling." (Doc. 13, at 15). Plaintiffs state that the Medical Defendants assessed the Decedent for mental health treatment, labeled her needs urgent and removed her from suicide watch within three days of her admission without

11

providing follow-up mental health care before her release into general population. (Doc. 13, at 11-12). Additionally, Plaintiffs contend that the Medical Defendants' lack of adequate policies and customs regarding mental health care and addiction withdrawal demonstrate a reckless and deliberate indifference to the Decedent's needs. (Doc. 13, at 7-10). Plaintiffs allege that the Medical Defendants did not amend the policies when multiple female inmates had committed suicide and had they "engage[d] in proper policies and training . . . [the Decedent] would be alive today." (Doc. 13, at 13-14). They further allege Plaintiffs state that the Medical Defendants' "policies and customs concerning inmate suicide were unconstitutional, in that the policy and custom was that anti-suicide policies and training were a waste of time and money." (Doc. 13, at 9). Plaintiffs allege that the Medical Defendants' "policies and customs concerning inmate suicide were unconstitutional, in that despite repeated suicides and related deaths . . . such untimely deaths were a simple fact of life which did not require investigation, assessment or prevention of future inmate deaths." (Doc. 13, at 9-10). Plaintiffs allege that the Medical Defendants viewed "anti-suicide policies and training [as] a waste of time and money" (Doc. 13, at 9) and that, had the Medical Defendants properly trained its staff on the policies recommended by the suicide expert or after the 2017 suicides and deaths of other inmates at LCCF, the Decedent would still be alive. (Doc. 13, at 14).

      Viewing the factual allegations as true and in a light most favorable to the Plaintiffs, and in consideration of the applicable standards the Court must apply when considering a motion to dismiss, the Court finds that Plaintiffs have alleged sufficient facts to survive the Medical Defendants' motion to dismiss. As such, the Medical Defendants' motion to dismiss Plaintiffs' Eighth Amendment claim regarding deliberate indifference to a vulnerability to suicide is denied.

C. ADA AND RA CLAIMS

In addition to asserting claims under § 1983, Plaintiffs also bring claims under the ADA and the RA. (Doc. 13, at 16-18). Defendants submit that Plaintiffs fail to state a claim under the ADA or RA because the complaint "cannot be plausibly interpreted to allege that it was because of [the Decedent's] addiction and mental health issues [that] she was denied essential services." (Doc. 16, at 12; Doc. 22, at 13). Specifically, Defendants argue that Plaintiffs' claims regarding the medical care of the Decedent do not give rise to an ADA violation and, due to the Decedent's active drug use, she was not a qualified individual under the ADA. (Doc. 16, at 12-15; Doc. 22, at 13-15). Plaintiffs respond that the Decedent was a qualified individual with a disability under the ADA and RA and that their allegations regarding the care she received are sufficient to assert claims under the ADA and RA. (Doc. 19, at 21-25).

Title II of the ADA prohibits discrimination by public entities, including state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-09 (1996). The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[4] 42 U.S.C. § 12132. Section 504 of the RA similarly states that "[n]o otherwise qualified individual with a

---

[4] The pleading requirements of ADA and RA claims are substantially similar, but the RA applies exclusively to entities that receive federal funding. *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 & n.10 (3d Cir. 2013). "States . . . waive their Eleventh Amendment immunity to RA claims when they accept federal funds." *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 199 (3d Cir. 2008). Plaintiff has alleged that Defendants are entities that receive federal funding. (Doc. 13, at 18)

13

disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "The 'substantive standards for determining liability [under the ADA and Rehabilitation Act] are the same.'" *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (quoting *McDonald v. Pa. Dep't of Pub. Welfare, Polk Ctr.,* 62 F.3d 92, 95 (3d Cir. 1995)). Thus, the Court "address[es] both claims in the same breath." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009); *see also Strickland v. Delaware Cty.*, No. CV 21-4141, 2022 WL 1157485, at *2 (E.D. Pa. Apr. 19, 2022). Additionally, a plaintiff can advance a discriminatory theory under the ADA or RA based on a failure to accommodate. *See McPherson v. Cty. of Dauphin,* No. 1:19-CV-01865, 2020 WL 1558206, at *2 (M.D. Pa. Mar. 24, 2020) (citing *Muhammad v. Court of Common Pleas*, 483 Fed. Appx. 759, 763 (3d Cir. 2012)). "[A] prison's refusal to accommodate inmates' disabilities 'in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs' constitutes a denial of the benefits of a prison's services, programs, or activities under Title II." *Furgess v. Pennsylvania Dep't of Corr.,* 933 F.3d 285, 290 (3d Cir. 2019).

To state a claim under either the ADA or the RA, Plaintiffs must allege that the decedent was a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability. *Furgess v. Pennsylvania Department of Corrections*, 933 F.3d 285, 288–89 (3d Cir. 2019); *see also Haas v. Wyoming Valley Health Care Sys.,* 553 F. Supp. 2d 390, 396 (M.D. Pa. 2008) (quotations omitted); *see also Pierce v. Pitkins,* 520 F. App'x 64, 67 (3d Cir. 2013). However, "the ADA does not create a federal cause of action for prisoners challenging the

14

medical treatment provided for their underlying disabilities." *Hubbard v. Taylor*, 452 F. Supp. 2d 533, 544 (D. Del. 2006), *aff'd*, 538 F.3d 229 (3d Cir. 2008).

### 1. Medical Defendants

Although not addressed in their brief in support, the Medical Defendants argue in their reply brief that they are not "a public entity" as defined by the ADA and RA. (Doc. 20, at 7). Specifically, the Medical Defendants contend that the Third Circuit and other courts in this circuit have held that a private corporation that contracts with a public entity cannot be considered itself a public entity. (Doc. 20, at 7); *see also Mathews v. Pa Dep't of Corr.,* 613 F. App'x 163, 170 (3d Cir. 2015). Plaintiffs contend that the Medical Defendants are implicated in claims under the ADA and RA because the Medical Defendants were acting as agents of Luzerne County, a public entity. (Doc. 19, at 20-21). Plaintiffs further submit that the Medical Defendants "acted as an agent of public entity" and should be considered a public entity for ADA and RA purposes. (Doc. 19, at 16); *see* 613 F. App'x at 170.

The Third Circuit held that "a private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Matthews*, 613 F. App'x at 170. Further, "[c]ourts reviewing whether an entity is an instrumentality of the state have concluded the term instrumentality "refers to governmental units or units created by them." *MGJ v. Sch. Dist. of Philadelphia*, Civ.A. No. 17-318, 2017 WL 2277276, at *10 n.109 (E.D. Pa. May 25, 2017) (citing *Langston v. Milton S. Hershey Med. Ctr.*, No. 15-02027, 2016 WL 1404190, at *11, *31 (M.D. Pa. Apr. 11, 2016)) (quoting *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)); *see also Keifer*, 2017 WL 3142279, at *3. A private entity contracting to provide health care services to prisons in the Commonwealth of Pennsylvania is not an instrumentality of the state. *See Whitehurst v. Lackawanna Cty.*, No. 3:17-cv-009032020 WL

15

6106616, at *11 (M.D. Pa. Mar. 5, 2020); *Keifer v. PrimeCare Medical, Inc.,* No. 16-6620, 2017 WL 3142279, at *3 (E.D. Pa. July 24, 2017). The Court finds the Third Circuit's ruling in *Matthews* and the Eastern District's ruling in *Keifer* persuasive.

As the Medical Defendants are not considered a public entity for purposes of the ADA and RA, their motion to dismiss these claims is granted.

### 2. Luzerne County

Luzerne County argues that Plaintiffs' allegations concerning their ADA and RA fail because they are seeking redress under the ADA for denial of medical treatment, because the Decedent was not a qualified individual with a disability, and because Luzerne County did not deny the Decedent benefits "by reason of" her disability. (Doc. 16, at 13; Doc. 22, at 11). Plaintiffs state that the Decedent was a qualified individual with a disability because the Medical Defendants were "required to provide appropriate health services to" the Decedent. (Doc. 19, at 22). Finally, Plaintiffs state that Defendants failed to reasonably accommodate the Decedent's propensity for suicide, addiction, and withdrawals. (Doc. 23, at 5-6, 9).

At this stage in the proceeding, Plaintiffs sufficiently allege that the Decedent was a qualified individual. The ADA and RA "contain carve-outs stating that individuals are not deemed 'qualified' if they are "'currently engaging in the illegal use of drugs' when the 'covered entity . . . acts on the basis of' the plaintiff's drug addiction." *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 308–09 (3d Cir. 2007) (citing 42 U.S.C. § 12210(a); 29 U.S.C. § 705(20)(C)(i)). The question of whether drug use is effectively ongoing or a serious problem is a fact-bound inquiry best left to the district courts requiring details of the Decedent's treatment and drug history. *See New Directions,* 490 F.3d at 310. Further, the statutory exception "was intended to ensure that employers could discharge employees who

16

were actually under the influence while at work and that employers could not discharge employees who were recovering addicts but were, at the time of any personnel action, drug free." See New Directions, 490 F.3d at 309 (quoting Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1188 (9th Cir. 2001 (quoting H.R.REP. NO. 101–596, at 62 (1990), U.S. Code Cong. & Admin. News 1990, pp. 565, 570–571 (Conf.Rep.)). Luzerne County argues that "Plaintiffs have not stated a claim because the [complaint] cannot be plausibly interpreted to allege that it was because of [the Decedent's] addiction and mental health issues that she was denied essential services." (Doc. 23, at 13). However, Defendants also state that the Decedent was not a qualified individual under the ADA because of her current use of illegal drugs. (Doc. 16, at 12-15; Doc. 22, at 13-15). The determination of whether the Decedent was a qualified induvial is best left for analysis at a later stage in the proceeding. See McKissick v. Cty. of York, No. 1:09-CV-1840, 2011 WL 5117621, at *3 (M.D. Pa. Oct. 25, 2011). Thus, the Court declines to find that the Decedent was not a qualified individual at this stage.

Next, the Court must determine whether Plaintiffs allege that the Decedent was "otherwise qualified for participation in the program or activity, or for the position sought; [and that] [s]he was excluded from the position sought, denied the benefits of, or subject to discrimination under the program or activity solely by reason of his or her [disability]." Haas, 553 F. Supp. 2d, 396. The Third Circuit has ruled that allegations of inadequate medical treatment are distinct from disability-based discrimination under the ADA. See, e.g., Kokinda v. Pa. Dep't of Corr., 663 F. App'x. 156, 159 (3d Cir. 2016). However, other courts in this Circuit have differentiated claims that allege inadequate medical care from claims that allege a denial of access to medication. See McPherson, 2020 WL 1558206, at *4 (denial of access to prescription medication was adequate to assert a violation under the ADA); Kloss v. Correct

17

*Care Sols.*, No. 1:18-CV-0025, 2018 WL 6268270, at *4 n.4 (W.D. Pa. Oct. 31, 2018) (stating that "[d]enying access to medications is not, however, a medical judgment or medical negligence, and such claims can be actionable under the ADA"), *report and recommendation adopted sub nom*. CV 18-25, 2018 WL 6266921 (W.D. Pa. Nov. 30, 2018); *see also McKissick v. Cty. of York,* No. 1:09-CV-01840, 2010 WL 1930132, at *7 (M.D. Pa. Mar. 19, 2010) (allowing an ADA claim to proceed where prison officials refused to provide a detainee with methadone).

Plaintiffs contend that due to the decedent's mental health issues and drug addiction she was denied access to Luzerne County's medical programs including providing her with necessary medications and reasonable accommodations. (Doc. 13, at 16). "Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." *Yeskey*, 524 U.S. at 210; *see also Furgess,* 933 F.3d at 290 ("[T]he Supreme Court has stated that a prison's refusal to accommodate inmates' disabilities 'in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs' constitutes a denial of the benefits of a prison's services, programs, or activities...." (citing *United States v. Georgia*, 546 U.S. 151, 157 (2006))); *Strickland,* 2022 WL 1157485, at *3. As Plaintiffs have alleged that Luzerne County deprived the Decedent of the facility's medical services including access to medication and failed to accommodate her needs during her withdrawal from opioids, Plaintiffs claims are sufficient to allege a claim under the ADA at this stage in the proceeding. *See McPherson,* 2020 WL 1558206, at *4; *Strickland,* 2022 WL 1157485, at *3.

Plaintiffs have sufficiently alleged a claim under the ADA and RA against Defendant Luzerne County. Defendant Luzerne County's motion to dismiss is denied, and the Medical Defendants' motion to dismiss is granted as to Plaintiffs' ADA and RA claims. (Doc. 16, at 13; Doc. 22, at 11).

### D.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment unless an amendment would be inequitable or futile. *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). The Court declines to grant Plaintiffs leave to amend their complaint regarding their ADA and RA claims against the Medical Defendants as they are not public entities under the ADA, and amendment is futile.

### IV.   CONCLUSION

Based on the foregoing, Medical Defendants' motion to dismiss (Doc. 15) is **GRANTED in part and DENIED in part**, and Defendant Luzerne County's motion to dismiss is **DENIED** (Doc. 21). Defendants are to file answers to the amended complaint within 21 days. An appropriate Order follows.

BY THE COURT:

Date: August 5, 2022

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**