**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SARAH SCHIAVONE, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:21-CV-01686 |
| v. | (MEHALCHICK, M.J.) |
| LUZERNE COUNTY, et al., | |
| Defendants. | |

**MEMORANDUM**

On October 4, 2022, and October 7, 2022, counsel for Plaintiffs Sarah Schiavone and Mickayla Meredick, as administrators of the Estate of Hailey Povisil (collectively, "Plaintiffs"), filed letters with the Court regarding outstanding discovery disputes as to Defendants Luzerne County and Wellpath, LLC. (Doc. 33; Doc. 35). Counsel for Wellpath filed a letter with the Court in response to Plaintiffs' letter on October 11, 2022, and a second responsive letter on October 19, 2022. (Doc. 36; Doc. 40). Counsel for Luzerne County filed a responsive letter with the Court on October 18, 2022, and a supplemental letter on November 14, 2022. (Doc. 39; Doc. 42). The parties appeared before the Court at an in-person discovery conference on November 21, 2022. (Doc. 43). Afterward, counsel for Plaintiffs filed a final letter with the Court to clarify arguments raised during the discovery conference. (Doc. 44).

I.   **STANDARD OF REVIEW**

Federal courts have broad discretion to determine the scope of discovery and to manage the discovery process. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987) ("The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion."). In the Third

Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999).

Federal Rule of Civil Procedure 37 governs motions to compel discovery, and "[t]he scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rule of Civil Procedure." *Brewer v. Berks Cty. Sheriff*, No. 13-5763, 2015 WL 13620425, at *2 (E.D. Pa. Oct. 5, 2015) (quoting *Breslin v. Dickinson Twp.*, No. 09-1396, 2011 WL 1577840 (M.D. Pa. Apr. 26, 2011)). Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(1)(C); *see Mayo v. City of Scranton*, No. 3:10-CV-935, 2012 WL 6050551, at *3 (M.D. Pa. Feb. 21, 2012).

When deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1)." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019). "If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of

producing the information." *Atkinson*, 414 F.Supp.3d at 744 (citation omitted). Discovery is governed by Rule 26, which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Relevance in this context has been 'construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case.'" *United States ex rel. Bergman v. Abbott Labs.*, No. 09-4264, 2016 WL 4247429, at *2 (E.D. Pa. Aug. 11, 2016) (quoting *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978)). The scope of discovery is broad, but it is not unlimited. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Discovery should not serve as a fishing expedition. *See Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 WL 1244047, at * 3 (E.D. Pa. Mar. 26, 2014); Fed. R. Civ. P. 26(b)(1).

## II.   **PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS BY WELLPATH**

On August 1, 2022, Plaintiffs served Wellpath with  43 document requests. (Doc. 40-1). Wellpath responded to Plaintiffs' document requests on October 3, 2022. (Doc. 33-1). On October 10, 2022, Wellpath provided Plaintiffs with supplemental responses. (Doc. 36, at 2; Doc. 40-1). Of the 43 document requests, Wellpath contends it has responded completely and produced responsive documents to 28 of them and raised valid objections to the remaining 15 requests. (Doc. 40, at 1).

Initially, to the extent that Defendants are asserting objections based on privileges, they should provide a privilege log that addresses each document to which Defendants are asserting privilege. The log should be provided within seven day of the date of the Order filed concurrently with this Memorandum. Upon consideration of Wellpath's responses and

supplemental responses to Plaintiffs' discovery requests, the Court will address the remaining requests to which objections were raised. Additionally, if Wellpath has responded to any of Plainitffs' requests "to be provided" those responses should be complete within seven days from the date of this Memorandum and the accompanying Order.

The Court next addresses specific objections raised by Defendants.

A. REQUEST NOS. 2, 5, 15, 16, 20 & 23 – OBJECTIONS RAISE PURSUANT TO THE PATIENT SAFETY AND QUALITY IMPROVEMENT ACT OF 2005

Plaintiffs make the following document requests:

2. Incident reports and affiliated documents concerning the incident which occurred on January 9, 2018, resulting in Hailey Povisil's death.

5. All Investigative Reports in their entirety relative to the cause, manner and circumstances leading up to and surrounding the death of Hailey Povisil.

15. The entire contents of any investigative file obtained, developed or possessed by you or anyone else acting on your behalf, excluding reference to mental impressions, conclusions or opinions representing the value or merit of the claim or defense or respecting strategy or tactics and privileged communications from counsel.

16. All documents concerning any investigation into the death of Hailey Povisil conducted by any law enforcement agency or personnel, the LCCF or any of the defendants.

20. All documents, including but not limited to videotapes, audiotapes and minutes of meetings, concerning all meeting at which anyone discussed the death of Hailey Povisil.

23. All documents concerning statement, oral or written, signed or not, from any person involved with or with knowledge of the January 9, 2018 death of Hailey Povisil.

(Doc. 40-1, at 2-3, 5-6, 8-9).

In response, Wellpath raises objections pursuant to the federal Patient Safety and Quality Improvement Act of 2005, 42 USCS § 299b-22 ("PSQIA"), Pennsylvania's Peer Review statute, 63 P.S. § 425, *et seq.*, and the Pennsylvania Medical Care Availability and Reduction of Error Act, 40 P.S. § 1303.311(b) ("MCARE Act"). (Doc. 40-1, at 2-3, 5-6, 8-9).

First, the Court finds that, as noted by Plaintiffs, Defendants may not assert Pennsylvania state law privileges in this matter. Under Federal Rule of Evidence 501, which governs all evidentiary privileges asserted in federal court, "federal privileges apply to federal law claims, and state privileges apply to claims arising under state law." *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000). In cases involving both federal and state claims, "especially where, as here, the evidence in dispute is apparently relevant to bot the state and the federal claims," "Rule 501 directs us to apply federal privilege law." *Pearson*, 211 F.3d at 66. Here, the amended complaint only sets forth claims under federal law, specifically 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Rehabilitation Act, 42 U.S.C. § 794a(a)(2) ("RA"). (Doc. 13; Doc. 44, at 2). The Court must apply federal privileges law and Defendants are precluded from asserting state law privileges.

Next, the Court finds that Wellpath has not established that the PSQIA should be applied. The PSQIA creates a framework through which medical care providers may engage in privileged peer review of their patient safety practices. Under the PSQIA, patient safety work product ("PSWP") is privileged and not subject to discovery in connection with a federal civil proceeding against a provider. 42 U.S.C. § 299b-22(a)(2). The PSQIA defines "patient safety work product" ("PSWP") as:

> Any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements—
>
> (i) which—
>
> (I) are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization; or
>
> (II) are developed by a patient safety organization for the conduct of patient safety activities;
>
> and which could result in improved patient safety, health care quality, or health care outcomes; or

(ii) which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.

42 USC § 299b-21(7)(A).

The PSQIA goes on to clarify:

(ii) Information described in subparagraph (A) does not include information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system. Such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product.

42 USC § 299b-21(7)(B).

Essentially, documents generated by the evaluation process are protected, but such information does not become privileged merely by virtue of having been reported. "[T]he critical inquiry is the purpose of creating the information, and the information will only be considered patient safety work product if it is created 'for the purpose of reporting' to a patient safety organization." *Crawford v. Corizon Health, Inc.*, No. 17-CV-113, 2018 WL 3361147, at *2 (WD Pa July 10, 2018) (quoting Patient Safety and Quality Improvement Act of 2005— HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations, 81 FR 32655-01, 2016 WL 2958759, at *32656 (F.R. May 24, 2016)).

Plaintiffs argue that Wellpath's objection is boilerplate because "Section 299b-22 is a now in-vogue objection by healthcare providers; however it is technical and in my experience is referred to by healthcare providers but not actually complied with in practice, and is thus inapplicable in most cases." (Doc. 33, at 2). Wellpath contends it conducted a Mortality Review following the death of Hailey Povisil, which is entitled to protection under the above-referenced statutes because the information contained in the Mortality Review was prepared as part of the peer review process. (Doc. 40, at 4). In turn, Plaintiffs argue "it is difficult to assess any withheld documents in the absence of an appropriate privilege log." (Doc. 44, at 2). In addition, Plaintiffs direct the Court to two cases in which Wellpath asserted privilege

pursuant to the PSQIA, and in which federal courts engaged in detailed discussion and analysis: *Estate of Hultman v. Cty. Of Ventura*, No. CV 21-6280, 2022 WL 2101723 (C.D. Cal. May 16, 2022), and *Herriges-Love v. Cty. Of Macomb*, No. 9-12193, 2020 WL 4726940 (E.D. Mich. Aug. 14, 2020). (Doc. 44 at 2).

The Court has already directed Wellpath to supplement its responses with a privilege log as is it difficult to determine whether PSQIA privilege application is established. To the extent that Wellpath continues to assert PSQIA privilege as part of its privilege log, the Court will revisit this issue upon receipt of that privilege log.

B.  REQUEST NO. 21 – DOCUMENTS CONCERNING INSURANCE POLICIES

In document request number 21, Plaintiffs request: "[a]ll documents concerning any insurance policy, any umbrella insurance policy, any homeowner's policy, or any other agreement of any kind covering any of the defendants for lawsuits commenced for violations of any person's civil rights or negligent acts." (Doc. 40-1, at 9). In response, Wellpath stated: "To be provided." (Doc. 40-1, at 9). At the discovery conference held on November 21, 2022, Plaintiffs stated that Wellpath has still not produced the applicable documents.

Accordingly, Wellpath is directed to produce the responsive documents within seven days from this date of this Memorandum and Order filed concurrently herewith.

C.  REQUEST NO. 25 – DOCUMENTS CONCERNING LAWSUITS

In document request number 25, Plaintiffs request:

All documents concerning any civil lawsuit concerning the suicide or attempted suicide of any prisoner or pretrial detainee, commenced on or after January 1, 2011 by any prisoner or pretrial detainee, or administrator, executor or representative of any prisoner's estate, in which Luzerne County or any of its correctional officers or employees, or Correct Care Solutions LLC or Wellpath LLC or any of their employees, were parties.

(Doc. 40-1, at 10).

In response, Wellpath stated:

Objection to the extent that this request seeks confidential and privileged
information protected under the Patient Safety and Quality Improvement Act
of 2005. *See* 42 USCS § 299b-22 and Pennsylvania state laws pertaining to peer
review privilege. Defendants further object to the extent that this request seeks
documents and information protected by attorney client and attorney work
product privileges and otherwise not subject to discovery.

(Doc. 40-1, at 11).

Wellpath further explains that Plaintiffs' request is "unreasonably burdensome," "not
reasonably related to the issues in this case which involves a prisoner at [LCCF]," and "overly
broad in that it seeks, without limitation, 'all documents' concerning lawsuits, which would
clearly include privileged communications and an expansive set of documents related to
litigation involving persons throughout the United States wherever CCS/Wellpath provided
services over a more than 10 year time period." (Doc. 40, at 4). In addition, Wellpath explains
that responsive documents may contain "highly confidential mental health records of
individuals who are not a party to this litigation and who have not given consent to release of
records." (Doc. 40, at 4). Finally, Wellpath argues that "because lawsuits are a matter of
public record, Plaintiff's counsel has the option to, at their expense, investigate and obtain
publicly available information related to lawsuits against CCS and/or Wellpath." (Doc. 40,
at 4).

As stated above, the Court declines to address the applicability of PSQIA privilege at
this time until Wellpath provides a privilege log identifying which privileges are being raised
for which documents. Next, the Court agrees with Wellpath that any lawsuits concerning the
suicide or attempted suicide of any prisoner or pretrial detainee in which Luzerne County or
CCS/Wellpath were parties, from 2011 to the present, is publicly available information that
Plaintiffs may obtain through docket searches. In addition, the Court notes that Plaintiffs'
discovery request appears to be overly broad in its request of documents over a ten-year time
period without any narrowing to a geographic location. "Even if discovery is proportional to

the needs of the case, courts have the discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit." *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, No. 18-11273, 2020 WL 1969898, at *6 (D.N.J. Apr. 24, 2020).

Accordingly, the Court will sustain Wellpath's objections to document request number 25. Because the Court has substantial doubt as to the relevance of the discovery of any civil actions that may have been filed against any of the named Defendants regardless of whether such claims were ultimately meritorious or not, the Court will sustain Wellpath's objections at this time, without prejudice to Plaintiffs seeking a narrower discovery response that more precisely explains the relevance of this information in their claims, and which narrows the scope of the discovery sought to specific case names and a reduced time frame. Furthermore, to the extent that Plaintiffs seek access to confidential information, they may do so by moving for a protective order, which, among other things, will treat medical records of Hailey Povisil and of other inmates as confidential and required to be filed in this case under seal. *See* Fed. R. Civ. P. 26(c); *see also Pearson,* 211 F.3d at 65.

D. REQUEST NO. 26 – DOCUMENTS CONCERNING SUICIDES

In document request number 26, Plaintiffs requests: "[a]ll documents concerning any suicide or attempted suicide in LCCF from 2013 to the present." (Doc. 40-1, at 11). In response, Wellpath makes the following objections:

> Objection to the extent that this request seeks confidential and privileged information protected under the Patient Safety and Quality Improvement Act of 2005. See 42 USCS § 299b-22 and Pennsylvania state laws pertaining to peer review privilege. Defendants further object to the extent that this request seeks documents and information protected by attorney client and attorney work product privileges and otherwise not subject to discovery. Finally, this request seeks information pertaining to other patients, in particularly highly confidential mental health records of patients not involved in this litigation that are not subject to discovery under federal or state law.

(Doc. 40-1, at 11-12, 15-16).

Wellpath further explains:

Counsel for Luzerne County has identified the individuals it believes have committed suicide at LCCF for the time period at issue. CCS did not begin providing services at LCCF until 2015. Without a proper authorization from the patient and/or the patient's representative, CCS cannot produce records of care provided or assessments of those patients. *See* 50 P.S. § 7111; *see also* 45 C.F.R. §§ 164.502(a), 160.103; 42 U.S.C. § 1320d.

In addition to objecting to providing any information related to patients other than Hailey Povisil, CCS indicated in its response that the request for the 2003 assessment provided by Lindsay Hayes was better directed to the County, particularly since CCS contracted to provide services at LCCF in 2015. The County has appropriately objected to providing an assessment performed 15 years before the events at issue.

(Doc. 40, at 5).

As stated above, the Court declines to address the applicability of PSQIA privilege at this time until Wellpath provides a privilege log identifying which privileges are being raised for which documents. However, the Court overrules Wellpath's objections to document request number 26.

The Court notes that it is well-established that any confidential medical records or privileged materials discussed in those lawsuits are not discoverable without a sufficient explanation as to why those documents are relevant to the present action. *See* Fed. R. Civ. P. 26(b)(1). The Court has "rejected these kinds of discovery requests as being not only overly broad, but unduly infringing upon the privacy rights of other inmates." *Williams v. Wetzel*, No. 1:17-cv-79, 2019 WL 1206061, at *3 (M.D. Pa. Mar. 14, 2019) (collecting cases); *see Easley v. Tritt,* No. 1:17-CV-930, 2020 WL 836695, at *16 (M.D. Pa. Feb. 20, 2020), *reconsideration denied,* No. 1:17-CV-930, 2020 WL 1911536 (M.D. Pa. Apr. 20, 2020). "These discovery requests are of questionable relevance and implicate importance privacy and security interest.

Moreover, the discovery of such information poses a security risk to both inmates and to any correctional staff who may intervene to stop such a risk." *Williams*, 2019 WL 1206061, at *3.

In keeping with those decisions, the Court concludes that Wellpath shall only produce responsive documents within its possession for the time period ranging from three (3) years prior to the incident and two (2) years following the incident. Such documents shall not include the identity of the individual or the individual's private medical information. Wellpath is directed to produce these responsible documents within seven days from the date of this Memorandum and Order filed concurrently herewith.

E. Request Nos. 33 & 37 – Documents concerning subcontracts or independent contracts

In document request number 33, Plaintiffs request: "[a]ll subcontracts between CCS and any person or entity for such subcontractor to provide services to inmates of LCCF." (Doc. 40-1, at 14). In document request number 37, Plaintiffs request: "[a]ll documents concerning any independent contractors or Contract Professionals engaged by CCS during the term of the Agreement for Inmate Health Care Services at Luzerne County, Pennsylvania, effective April 1, 2015." (Doc. 40-1, at 15). At the discovery conference before the Court, Wellpath stated that it will supplement its responses to clearly articulate whether or not any responsive documents are in its possession. Plaintiffs stated that this would be a sufficient response at this time. Wellpath is directed to produce any responsive documents within its possession for request numbers 33 and 37 within seven days from this date of this Memorandum and Order filed concurrently herewith.

F. Request Nos. 35 & 36 – Monthly reports and documents related to monthly meetings

In document request number 35, Plaintiffs request: "[a]ll monthly reports made pursuant to section 3.2 of the Agreement for Inmate Health Care Services at Luzerne County,

Pennsylvania, effective April 1, 2015." (Doc. 40-1, at 14). In document request number 36, Plaintiffs request: "[a]ll notes and other documents concerning monthly meetings required under section 3.3 of the Agreement for Inmate Health Care Services at Luzerne County, Pennsylvania, effective April 1, 2015." (Doc. 40-1, at 14). Wellpath objects to the request as overly broad, unduly burdensome and not proportional to the discovery needs of this case. (Doc. 40-1, at 14). Further, Wellpath argues that Plaintiffs failed to indicate why such reports or meeting notes could lead to discoverable evidence and that the document requests are "nothing more than a fishing expedition less designed to unearth facts or information related to this case, but intentionally and overly broad as part of an effort to potentially uncover documents and evidence that counsel may attempt to use in different litigation." (Doc. 40, at 5).

The Court agrees with Wellpath that Plaintiffs have not established why monthly reports and notes or other documents from those meetings are relevant to this action. At the discovery conference, Plaintiffs explained that the monthly reports and related documents are relevant to the *Monell* claims; however, it is not clear as to what information Plaintiffs are seeking. Moreover, Plaintiffs have failed to indicate why such monthly reports and meeting notes from 2015 to the present are relevant to their claims. Therefore, the Court will sustain Wellpath's objections at this time, without prejudice to Plaintiffs seeking a narrower discovery response that more precisely explains the relevance of this information in their claims, and which narrows the scope of the discovery sought to only those monthly reports and related documents which are actually discoverable under Rule 26.

G. REQUEST NOS. 38-40 – DOCUMENTS CONCERNING ASSESSMENTS BY LINDSAY HAYES

In document request number 38, Plaintiffs request: "[t]he September 2003 assessment of the Luzerne County Prison provided by Lindsay Hayes." (Doc. 40-1, at 15). In document

request number 39, Plaintiffs request: "[a]ll other assessments of LCCF from LCCF from 2003 the present concerning suicide prevention." (Doc. 40-1, at 15). In document request number 40, Plaintiffs request: "[a]ll notes and other documents concerning any 'verbal debriefing' made by Lindsay Hayes to any employee, agent, attorney and/or representative of Luzerne County." (Doc. 40-1, at 16). In response, Wellpath objects to these document requests, arguing that the requests are remote in time, better directed to Luzerne County, and protected by federal and state privileges. (Doc. 40-1, at 15-16). At the discovery conference held before the Court, Wellpath provided the Court with a copy of the 2018 assessment by Lindsay Hayes to review and determine whether work-product privilege applies.

First, regarding the 2003 assessment by Lindsay Hays, the Court agrees with Wellpath that this request is too remote in time to be relevant to the claims presented in this action. The assessment was performed fifteen (15) years before the events at issue in this case took place and Plaintiffs have not established why the Court should disregard this significant time span. Therefore, the Court will sustain the objections to document request number 38.

However, regarding the 2018 assessment by Lindsay Hays, the Court overrules Wellpath's objections to document request numbers 39 and 40, and directs Wellpath to provide Plaintiffs a copy of the assessment. Under the work-product doctrine, Rule 26 explicitly protects from discovery all documents "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). Similarly, federal common law recognizes the deliberative-process privilege, which shields government documents that were created in anticipation of an agency decision. *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987) (citing *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150-54 (1975); *EPA v. Mink*, 410 U.S. 73, 89, n.16 (1973)). These privileges are not absolute. Even if the Court determines that the privileges apply, Plaintiffs may show that the privileges should be overcome. Though the party asserting a privilege bears the initial

burden of establishing that the privilege applies, the party seeking discovery ultimately must demonstrate why privileged material should nevertheless be produced. *In re Grand Jury (OO-2H)*, 211 F. Supp. 2d 555, 557 (M.D. Pa. 2001) (citing *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989)). In adjudicating such questions, courts are bound to construe evidentiary privileges strictly. *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) (internal citations omitted).

In light of these principals and upon review of the document, the Court finds that the 2018 assessment is not protected by the work-product privilege. The work-product privilege has two sources. The first is Rule 26(b)(2), which protects only "documents and tangible things." Fed. R. Civ. P. 26(b)(2). Rule 26 protects material when it is "prepared in anticipation of litigation" "by or for another party or its representative."[39] This protected work product is further divided into two categories: "ordinary" and "opinion" work product. Fed. R. Civ. P. 26(b)(2). Opinion work product, which includes any materials containing "mental impressions, conclusions, opinions, or legal theories," is entitled to greater protection than ordinary work product, which encompasses everything else. Fed. R. Civ. P. 26(b)(2).

The second source of the work-product privilege is the United States Supreme Court's decision in *Hickman v Taylor*. *Hickman* has been partially codified by Rule 26(b)(3), but it set forth the principles upon which the work-product privilege is founded. *See, e.g.*, *Abdell v. City of New York*, No. 05-CV-8453, 2006 WL 2664313, at *4-6 (Sept. 14, 2006) (determining whether *Hickman* provided an independent basis for precluding discovery above and beyond the protections set forth in Rule 26(b)(3)). The decision was motivated by the "'strong public policy' underlying the work-product doctrine." *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981) (quoting *United States v. Nobles*, 422 U.S. 225, 236-40 (1975)). *Hickman* has been used to provide greater protection for opinion, rather than ordinary, work product, than that

afforded under Rule 26 alone. *See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003) (acknowledging that the court has "entertained work product challenges to grand jury subpoenas even though neither [the Federal Rules of Civil Procedure] nor [the Federal Rules of Criminal Procedure] strictly applies in this context."); *e.g.*, *Upjohn*, 449 U.S. at 401-02 ("As Rule 26 and *Hickman* make clear, [opinion] work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship."); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985), *cert. denied*, 106 S. Ct. 232 (1985) (extending work-product protection to the "selection and compilation of documents" in preparation for pretrial discovery).

Under both Rule 26 and *Hickman*, opinion work product "is accorded an almost absolute protection from discovery." *Sporck*, 759 F.2d at 316 (citing *Upjohn*, 449 U.S. at 401). This is because, ordinarily, "any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases." *Sporck*, 759 F.2d at 316 (internal citations omitted). Nevertheless, neither the Supreme Court nor the United States Court of Appeals for the Third Circuit has foreclosed the possibility that opinion work product might be disclosed under certain circumstances. *Upjohn*, 449 U.S. at 401; *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 663-64 (3d Cir. 2003) ("[O]pinion work product protection is not absolute, but requires a heightened showing of extraordinary circumstances.") (quoting *Sporck*, 759 F.2d at 316).

Thus, as stated by this court in *Keefer v. Erie Insurance Exchange*, Civ. No. 13-cv-1938, 2014 WL 901123, at *4 (M.D. Pa. Mar. 7, 2014), the gravamen of a claim of work product protection necessarily requires an assessment of when litigation was anticipated, which is a determination not subject to a bright-line rule. The Court has long adopted a case-by-case

approach. *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (M.D. Pa. 1985). As recognized by the Third Circuit, "[p]rudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (citing *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)). Thus, whether litigation was reasonably anticipated is a fact-dependent inquiry. The burden of demonstrating that a document is protected is on the party asserting the doctrine. *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

Plaintiffs argue the 2018 assessment by Lindsay Hayes is relevant to the *Monell* claim, even though it was conducted after the events at issue in this litigation. (Doc. 44, at 1). Although the Court cannot determine precisely when Defendants' reasonably anticipated litigation, the Court has reviewed the entire 2018 assessment by Lindsay Hays with the above-mentioned standards in mind and concludes that the 2018 assessment was not prepared in anticipation of litigation and is not protected by the work-product privilege.

In *Sabric v. Martin,* the Court concluded that an investigation was conducted in the course of preparation for possible litigation and, therefore, protected by work-product privilege where it was promptly requested by counsel and contains the opinions and mental impressions of the investigator. No. 3:CV-09-2237, 2011 WL 2006828, at *1 (M.D. Pa. May 23, 2011). However, in this case, the 2018 assessment itself disclaims any potential assertion that this investigation was conducted in anticipation of future litigation. Specifically, on the second page of the document, Lindsay Hayes clearly states: "It should be noted that the determination for the need of this writer's assessment was not prompted by litigation or critical investigation of any of the three recent inmate suicides. Rather, these actions were taken through the pro-active initiative of Luzerne County and Director Rockovich who were committed to determining what steps, if any, were necessary to improve suicide prevention

within the Luzerne County Correctional Facility." Upon consideration of the assessment, the Court finds that this document may not be classified as work-product.

Accordingly, Wellpath is directed to produce the 2018 assessment by Lindsay Hays within seven days from the date of this Memorandum and Order filed concurrently herewith.

### H.  EMAILS CONCERNING HAILEY POVISIL

Finally, at the conference on November 21, 2022, Plaintiffs requested that Wellpath produce all emails that concern Hailey Povisil. (Doc. 43). Plaintiffs requested that if Wellpath does not have any responsive documents due to its one-year retention policy, Wellpath provide a statement saying so. (Doc. 43). The Court directs Wellpath provide a response to Plaintiffs' request within seven days from the date of this Memorandum and Order filed concurrently herewith, including an explicit assertion of whether responsive documents are within Wellpath's possession or not.

## III.  PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS BY LUZERNE COUNTY

On August 1, 2022, Plaintiffs served Luzerne County with forty-three (43) document requests. (Doc. 35-1). As noted *supra*, the Court directs Defendants to supplement all discovery responses with a privilege log to discern which privileges are being raised for which documents. Upon consideration of Luzerne County's responses and supplemental responses to Plaintiffs' discovery requests, the Court will address the remaining requests to which objections were raised. If Plaintiffs discover that Luzerne County's responses to the other requests are deficit, Plaintiffs may file a letter with the Court describing those deficiencies at that time.

### A.  REQUEST NOS. 9 & 14 – PHYSICAL EVIDENCE

In document request number 9, Plaintiffs request: "[a]ll item(s) involved in the incident which occurred on January 9, 2018 resulting in Hailey Povisil's death." (Doc. 35-1, at 3). In response, Luzerne County made the following objections: "[t]his production request is not

reasonably calculated to lead to the discovery of admissible evidence. By way of further answer, upon information and belief the ligature utilized by the Decedent is no longer in the possession of the County Defendant." (Doc. 35-1, at 3). In document request number 14, Plaintiffs request: "[a]ll physical evidence maintained in county custody relating to the Hailey Povisil's death. . . ." (Doc. 35-1, at 3). In response, Luzerne County argues that "[t]his request is duplicative of requests number 9 and the Decedent incorporates its response to number 9 above as though the same were set forth at length." (Doc. 35-1, at 3).

At the onset, the Court agrees with Luzerne County that request number 14 seeks precisely the same items of physical evidence as request number 9 and is, therefore, duplicative. Next, the Court finds that Luzerne County has provided a sufficient response to Plaintiffs' request number 9 in its statement that "any physical evidence, i.e., in the form of a blanket, mattress, ligature from Ms. Povisil's cell has not been saved." (Doc. 39, at 2).

Accordingly, Luzerne County is not required to provide further response.

B.  REQUEST NO. 13 – CORONER'S OFFICER DOCUMENTS

In document request number 13, Plaintiffs request:

A complete copy of any and all documents and things prepared by and/or for and maintained by the Luzerne County Coroner's Office concerning the cause, manner and circumstances leading up to and surrounding the death of Hailey Povisil, including but not limited to the following: Certificate of Death; Coroner's Report and all affiliated records; Autopsy Report(s); Toxicology Reports; Autopsy Photographs.

(Doc. 35-1, at 3).

In response, Luzerne County asserts that it "is not in possession of the records of the Luzerne County Coroner's Office which is a separate department located within County government. Plaintiff should contact the Office of Coroner for these records." (Doc. 35-1, at 3).

Considering Luzerne County's assertion that the Coroner's Office "operates completely independent from the Correctional Facility," the Court declines to direct Luzerne

County to respond to document request number 13. Plaintiffs may issue a subpoena to the Office of the Coroner to obtain the requested documents.

C.  REQUEST NO. 20 – MEETINGS CONCERNING HAILEY POVISIL'S DEATH

In document request number 20, Plaintiffs request: "[a]ll documents, including but not limited to videotapes, audiotapes and minutes of meetings, concerning all meetings at which anyone discussed the death of Hailey Povisil." (Doc. 35-1, at 4). In response, Luzerne County makes the following objection: "[t]his request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. By way of further answer, the County Defendant would only know whether any such discussions occurred by reviewing meeting minutes dating back to January of 2018 which is unduly burdensome." (Doc. 35-1, at 4-5). In a supplement to its response, Luzerne County explains that the Clerk of the Luzerne County Council only retains the minutes from voting sessions, which are typed/transcribed and recorded. (Doc. 42, at 1). In addition, Luzerne County states that those recordings, typed meeting minutes, and agendas can be found on the County's website at the following webpage: https://www.luzernecounty.org/437/County-Council, under the "Go To Meeting Agendas, Minutes and Audio" link, (Doc. 42, at 1). Luzerne County maintains that a search of Hailey Povisil's name did not identify any responsive documents and invites Plaintiffs to listen to any meeting recordings themselves. (Doc. 42, at 1).

Upon consideration of the parties' submissions, the Court finds that Luzerne County has sufficiently responded to Plaintiffs' document request number 20 and declines to order further response at this time. If Plaintiffs determine that Luzerne County's supplemental response is deficient, the Court will revisit the issue at that time.

D.  REQUEST NO. 22 – SUICIDE TRAINING MATERIALS

In document request number 22, Plaintiffs request: "[a]ll documents concerning any insurance policy any umbrella insurance policy, any homeowner's policy, or any other agreement of any kind covering any of the defendants for lawsuits commenced for violations of any person's civil rights or negligent acts." (Doc. 35-1, at 5). In response, Luzerne County makes the following objection: "[t]his request is overly broad and unduly burdensome in that it does not establish temporal parameters as to the number of years for which Plaintiff seeks suicide training curriculum materials. Without waiving said objection, Luzerne County will provide the suicide training materials which were utilized in the year 2017." (Doc. 35-1, at 5).

In the letter filed with the Court, Plaintiffs acknowledge Luzerne County's commitment to produce suicide training materials for the year 2017, the year before Hailey Povisil's death. (Doc. 35, at 2). However, Plaintiffs contend "responsive materials should be produced dating back to at least 2010." (Doc. 35, at 2). Conversely, Luzerne County avers that it cannot provide an accurate submission for training dating back to 2010. (Doc. 39, at 2). Luzerne County explains that "[a]s training is modified over the course of years, training material which is made obsolete by its replacement, i.e., more recent trainings, old ones are eliminated from the County's suicide training documentation." (Doc. 39, at 3).

Upon consideration of Luzerne County providing the suicide training materials utilized in 2017 and its assertion that prior training materials are not in its possession, the Court declines to address this matter further as it appears that Luzerne County has fulfilled its burden of discovery regarding request number 22. Luzerne County is reminded of its ongoing duty to supplement discovery responses if it "learns that in some material respect the disclosure or response is incomplete or incorrect." See Fed. R. Civ. P. 26(e).

E.  Request No. 25 – Documents Concerning Lawsuits

- 20 -

In document request number 24, Plaintiffs request:

> All documents concerning any civil lawsuit concerning the suicide or attempted suicide of any prisoner or pretrial detainee, commenced on or after January 1, 2011 by any prisoner or pretrial detainee, or administrator, executor or representative of any prisoner's estate, in which Luzerne County or any of its correctional officers or employees, or [CCS] or [Wellpath] or any of their employees, were parties.

(Doc. 35-1, at 5-6).

In response, Luzerne County makes the following objection: "This request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant information." (Doc. 35-1, at 6).

Plaintiffs aver that "[t]hese documents are highly relevant, as plaintiffs assert a *Monell* claim against Luzerne County, and such documents would illuminate issues concerning Luzerne County's polices and/or customs. . . ." (Doc. 35, at 3). Conversely, Luzerne County contends no responsive documents can be readily accessed because it "does not maintain a separate database or physically maintain copies of civil lawsuits commenced against it relating to suicide or attempted suicides." (Doc. 39, at 4).

As explained above, any lawsuits concerning the suicide or attempted suicide of any prisoner or pretrial detainee in which Luzerne County or CCS/Wellpath were parties, from 2011 to the present, is publicly available information that Plaintiffs may obtain through docket searches. Because the Court has substantial doubt as to the relevance of the discovery of any civil actions that may have been filed against any of the named Defendants regardless of whether such claims were ultimately meritorious or not, and because Plaintiffs have not explained why they are seeking this information, the Court will sustain Luzerne County's objections at this time, without prejudice to Plaintiffs seeking a narrower discovery response that more precisely explains the relevance of this information in their claims, and which narrows the scope of the discovery sought. Furthermore, to the extent that Plaintiffs seek

access to confidential information, they may do so by moving for a protective order, which, among other things, will treat medical records of Hailey Povisil and of other inmates as confidential and required to be filed in this case under seal. *See* Fed. R. Civ. P. 26(c); *see also Pearson,* 211 F.3d at 65.

Accordingly, the Court sustains Luzerne County's objections to document request number 25.

F.   REQUEST NO. 26 – DOCUMENTS CONCERNING SUICIDES

In document request number 26, Plaintiffs request: "[a]ll documents concerning any suicide or attempted suicide in LCCF from 2013 to the present." (Doc. 35-1, at 6). In response, Luzerne County makes the following objection: "[t]his request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant information." (Doc. 35-1, at 6).

In their letter filed with the Court, Plaintiffs argue that Luzerne County makes "boilerplate objections," and that "such documents would illuminate issues concerning Luzerne County's policies and/or customs." (Doc. 35, at 3). Conversely, Luzerne County maintains that "[w]hile an investigation is conducted incident to each suicide at the prison, there is no single repository where these individual investigations are collected." (Doc. 39, at 4). However, Luzerne County does provide a report from the State of Pennsylvania, that reflects the number of suicides reported to the state between 2015 and 2011 by each county. (Doc. 39, at 4).

Upon consideration of Luzerne County's responses and letter filed with the Court, the Court concludes that Luzerne County appears to have satisfied its burden and produced the responsive documents within its possession. Therefore, the Court declines to direct it to provide further responses to Plaintiffs' discovery request number 26. Luzerne County is

reminded of its ongoing duty to supplement discovery responses if it "learns that in some material respect the disclosure or response is incomplete or incorrect." *See* Fed. R. Civ. P. 26(e).

G. REQUEST NOS. 27, 28, 33, 34, & 37 – DOCUMENTS CONCERNING MENTAL HEALTH AND MEDICATION ISSUES

In document request number 27, Plaintiffs request: "[a]ll documents concerning evaluations, referrals, crisis management, suicide intervention, individual therapy and group therapy in place at LCCF during 2017 and 2018." (Doc. 35-1, at 6). In document request number 28, Plaintiffs request: "[t]he 'Preferred Medication List' used by CCS at LCCF for 2017 and 2018." (Doc. 35-1, at 6). In addition, document request numbers 33, 34, and 37 request documents concerning CCS's subcontracts for health care at the LCCF, and CCS's health and mental health education training for LCCF employees. In response, Luzerne County makes the objection that these requests should be direct at Wellpath. (Doc. 35-1, at 6). In the letter filed with the Court, Plaintiffs maintain that Luzerne County is still obligated to state whether any responsive documents are within its control. (Doc. 35, at 3). In opposition, Luzerne County maintains that "[t]he documents at issue are held by parties other than the County and the Plaintiff should secure those records from those parties." (Doc. 39, at 4).

Upon consideration of the parties' submissions, the Court finds that Luzerne County has satisfied its obligations in responding to Plaintiffs' document requests and declines to direct it to produce further responses. Again, Luzerne County is reminded of its ongoing duty to supplement discovery responses if it "learns that in some material respect the disclosure or response is incomplete or incorrect." *See* Fed. R. Civ. P. 26(e).

H. REQUEST NOS. 30 & 31 – REQUESTS FOR PROPOSALS OF INMATE HEALTH CARE SERVICES BETWEEN LUZERNE COUNTY AND CCS

In document request number 30, Plaintiffs request: "[a]ll documents, including but not limited to videotapes, audiotapes and minutes of meetings, concerning all meetings at which anyone discussed the death of Hailey Povisil." (Doc. 35-1, at 6). In response, Luzerne County makes the following objection: "[t]his request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." (Doc. 35-1, at 6). In document request number 30, Plaintiffs request: "[t]he August 13, 2014 Request for Proposal of Inmate Health Care Services made or released by Luzerne County." (Doc. 35-1, at 7). In response, Luzerne County makes the following objection: "[t]his request is not reasonably tailored to lead to the discovery of relevant evidence. Without waiving said objection, County Defendant is taking steps to locate the RFP in question." (Doc. 35-1, at 7).

Importantly, in its letter filed with the Court, Luzerne County stated that it has produced the RFP from October 10, 2014. (Doc. 39, at 4). Accordingly, the Court declines to direct further response at this time. If Plaintiffs determine that Luzerne County's response is deficient at a later time, the Court will revisit this issue at that time.

I.  REQUEST NOS. 35 & 36 – DOCUMENTS CONCERNING MONTHLY REPORTS

In document request number 35, Plaintiffs request: "[a]ll monthly reports made pursuant to section 3.2 of the Agreement for Inmate Health Care Services at Luzerne County, Pennsylvania, effective April 1, 2015." (Doc. 35-1, at 7). In document request number 35, Plaintiffs request: "[a]ll notes and other documents concerning monthly meeting required under section 3.3 of the Agreement for Inmate Health Care Services at Luzerne County, Pennsylvania, effective April 1, 2015." (Doc. 35-1, at 7). In response, Luzerne County makes the following objection: "[t]his request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." (Doc. 35-1, at 7).

In the letter filed with the Court, Plaintiffs maintain that the monthly reports and meeting minutes are "highly relevant – or their non-existence is highly relevant." (Doc. 35, at 4). In opposition, Luzerne County re-asserts that this request is overly broad and that Plaintiffs have not explained in their letter to the Court that the request would lead to the discover of relevant evidence. (Doc. 39, at 4). The Court agrees with Luzerne County that Plaintiffs have not established why monthly reports and notes or other documents from those meetings are relevant to this action. At the discovery conference, Plaintiffs explained that the monthly reports and related documents are relevant to the *Monell* claims, however, it is not clear as to what information Plaintiffs are seeking. Moreover, Plaintiffs have failed to indicate why such monthly reports and meeting notes from 2015 to the present are relevant to their claims. Therefore, the Court will sustain Luzerne County's objections at this time, without prejudice to Plaintiffs seeking a narrower discovery response that more precisely explains the relevance of this information in their claims, and which narrows the scope of the discovery sought to only those monthly reports and related documents which are actually discoverable under Rule 26.

J.   REQUEST NO. 38 & 40 – DOCUMENTS CONCERNING LINDSAY HAY'S ASSESSMENTS

In document request number 38, Plaintiffs request: "[t]he September 2003 assessment of the Luzerne County Prison provided by Lindsay Hayes." (Doc. 35-1, at 8). In response, Luzerne County makes the following objection: "[t]his request is so remote in time that it is not reasonably tailored to lead to the discovery of relevant evidence." (Doc. 35-1, at 8).

In document request number 40, Plaintiffs request: "[a]ll notes and other documents concerning any 'verbal debriefing' made by Lindsay Hayes to any employee, agent, attorney and/or representative of Luzerne County." (Doc. 35-1, at 8). In response, Luzerne County makes the following objection: "[t]his request is not reasonably calculated to lead to the

discovery of relevant evidence. Without said objection, the County Defendant does not believe any such notes or 'other documents' concerning verbal debriefing made by Lindsay Hayes is in its possession." (Doc. 35-1, at 8).

As discussed above, regarding the 2003 assessment by Lindsay Hays, the Court agrees that this request is too remote in time to be relevant to the claims presented in this action, and the Court sustains the objections to document request number 38.

As to the 2018 assessment by Lindsay Hays, the Court overrules the objections to document request numbers 39 and 40. Luzerne County argues that the document is privileged and falls within the exception to disclosure contemplated by Federal Rule of Civil Procedure 26(b)(5) because Lindsay Hayes was asked to assess the LCCF facility's readiness to meet the challenges associated with potential suicides in correctional facilities. (Doc. 39, at 5). However, upon review of the document, the Court determined that it is not entitled to work-produce privilege. As stated *supra*, the Court has directed Wellpath to provide Plaintiffs with a copy of the assessment.

IV.   **CONCLUSION**

For the reasons set forth above, Defendants' objections are sustained in part and overruled in part. An appropriate Order follows.


*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**